**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Ronald BOUCK and Corey Day,
Defendants–Appellants.**

Nos. 87–1651, 87–1712.

United States Court of Appeals,
Tenth Circuit.

June 12, 1989.

See also, 10th Cir., 841 F.2d 1485.

Jerome H. Mooney of Mooney & Associates, Salt Lake City, for defendants-appellants.

Wayne T. Dance, Asst. U.S. Atty. (Brent D. Ward, U.S. Atty., with him on the brief), Salt Lake City, Utah, for plaintiff-appellee.

Before LOGAN, BALDOCK and McWILLIAMS, Circuit Judges.

McWILLIAMS, Circuit Judge.

A jury convicted Ronald Bouck of conspiracy (21 U.S.C. § 846), three separate counts of possession of cocaine with an intent to distribute (21 U.S.C. § 841(a)(1)), and one count of unlawful use of the telephone (21 U.S.C. § 843(b)). The same jury convicted Corey Day of conspiracy (21 U.S.C. § 846), three separate counts of possession of cocaine with an intent to distribute (21 U.S.C. § 841(a)(1)), and one count charging an unlawful use of the telephone (21 U.S.C. § 843(b)).[1]

Bouck was sentenced to eight years imprisonment on the conspiracy conviction and on one count of the distribution conviction, to be served concurrently, and he was also sentenced to a special parole term of

---

1. The same jury also convicted Scott Nichols, Paul Hunt, David Palomino, and Kevin Hoffman of various drug violations. Each has his own separate appeal, which will be handled by separate opinions, though there is overlap between opinions.

three years on the distribution conviction. On the remaining convictions for possession with intent to distribute and unlawful use of a telephone, Bouck was placed on probation for five years to commence after he had served his sentences. Additionally, Day was sentenced to five years imprisonment on the conspiracy conviction and on one count of the distribution conviction, to be served concurrently, and he was also sentenced to a special parole term of three years on the distribution conviction. On the remaining convictions for possession with intent to distribute and unlawful use of a telephone, Day was placed on five years probation to commence after he had served his sentences. Both appeal their respective convictions and the sentences imposed thereon.[2]

Both appellants argue the following: (1) the indictment charged one conspiracy, whereas the government's evidence showed multiple conspiracies; (2) the government's investigation constituted outrageous government conduct requiring a dismissal of all charges; (3) prosecutorial misconduct in closing argument to the jury; and (4) improper admission of hearsay evidence under the conspiracy exception. Additionally, Bouck argues that the evidence is insufficient to sustain his convictions on the three counts charging him with possession of cocaine with an intent to distribute. We are not persuaded by any of these arguments and, therefore, affirm.

The government's theory of the case was that for some time prior to the dates of the several offenses charged in the indictment, Scott Nichols, a co-defendant, and Milton Singleton, not a party to this action, had been importing cocaine from California and Florida into Salt Lake City, Utah. Upon arrival it was cut, packaged, and sold to others who in turn sold it at retail in the Salt Lake City area. Eventually, Milton Singleton was arrested in Florida and his sister, Bonnie Kemp, became concerned that Nichols, and others, were "taking over" her brother's drug business. Bonnie Kemp then enlisted the aid of her friend,

John Clayton, to help her check into the situation.

Unbeknownst to Kemp, Clayton contacted the Federal Bureau of Investigation and reached an agreement to infiltrate the drug operation. Clayton became involved in the alleged conspiracy to the extent that he "kept the books" and, in connection therewith, attended various meetings of the conspirators, frequently in the company of Scott Nichols and others who actually imported and distributed the cocaine. Thereafter, Nichols continued to import cocaine from California and Florida to Salt Lake City, Utah, where it was distributed to various dealers.

■ Appellants' initial argument is that the government in the indictment alleged a single conspiracy but that its evidence established more than one conspiracy, and that such constitutes a misjoinder necessitating a dismissal of the conspiracy count because of duplicitous pleading. In thus arguing, appellants rely on *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). In that case the government conceded that it had alleged one conspiracy, but at trial had established eight, and the only issue was whether such a discrepancy was only harmless, or prejudicial. If it were harmless, the convictions apparently would have been upheld. *See Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 630, 79 L.Ed. 1314 (1935). Be that as it may, the Supreme Court in *Kotteakos* held that the variance was prejudicial and reversed. In our case, however, the government makes no such concession as it made in *Kotteakos* and argues that its evidence established only one conspiracy involving many actors, large amounts of cocaine and a common goal, that is, making lots of money on a continuing basis.

In situations analogous to the present one we have constantly rejected the multiple conspiracy argument. *See United States v. Dickey*, 736 F.2d 571 (10th Cir. 1984); *United States v. Watson*, 594 F.2d

---

2. In the trial court, Bouck and Day were represented by their own individual counsel. On appeal, however, they are both represented by the same counsel who has filed one brief for both appellants, and, accordingly, both appeals will be handled in this opinion.

1330 (10th Cir.), *cert. denied sub nom. Brown v. United States,* 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979). Further, the fact that Bouck and Day did not know the names of the sources for cocaine in Florida and California does not establish more than one conspiracy. In *Watson,* addressing the same general arguments as appellants raise here, we spoke as follows:

> We have discussed the evidence in detail earlier. It suffices to note here that it demonstrated that Anderson supplied drugs from California to Thompson, the Tulsa wholesaler, who distributed them to various street dealers, including these three appellants. *From evidence of the volume and nature of their operations, an inference may be drawn of awareness by appellants of the scope of the narcotics conspiracy.*
>
> Where large quantities of narcotics are being distributed, each major buyer may be presumed to know that he is part of a wide-ranging venture, the success of which depends on performance by others *whose identity he may not even know. United States v. Heath,* 580 F.2d 1011, 1022 (10th Cir.). We are satisfied that the evidence here shows a common design to acquire and distribute heroin and cocaine, id. at 1022, and that it was permissible to link the appellants with Thompson and Anderson. Whether the evidence was sufficient to establish the single conspiracy charge was a question for the jury.

*Watson,* 594 F.2d at 1339–40 (footnote omitted) (emphasis added). Accordingly, appellants' multiple conspiracy argument is not persuasive.

■ Bouck and Day next argue that the government's investigation constituted outrageous governmental misconduct which violated their fifth amendment right of due process and also was in violation of the doctrine of separation of powers between the legislative and executive branches of government, as set forth in article I, section 1 and article II, section 3.[3] The argument, though twofold, is in each instance based on Clayton's conduct as authorized and permitted by the Department of Justice. Appellants would have us believe that "but for" Clayton's activities there would not have been any importation of cocaine by them, or any other alleged conspirators, from Florida and California with subsequent distributions in the Salt Lake City area.[4] This hypothesis is seriously weakened by the fact that Scott Nichols, and others, were importing cocaine from Florida and California for distribution in the Salt Lake area *before* Clayton, at the behest of Bonnie Kemp, entered the picture.

Regardless of the approach taken, we simply fail to see that the government's use of Clayton equates to such outrageous conduct as to fatally taint the indictment against either Bouck or Day, or any of the other defendants. Clayton first approached the government, and after deliberation on his part, agreed to assist in the government's investigation into the drug business in Salt Lake City. The use of informants and undercover agents by the government is not a new practice.[5] Here Clayton infiltrated a drug operation that was in a state of transition, and he did so quite successfully. We are not shocked by Clayton's conduct.

■ Both appellants also argue that their convictions should be reversed because of improper closing argument by the prosecution. In particular, they claim that the prosecutor made reference to doc-

3. Appellants' "separation of powers" argument is based on his belief that only the legislature can extend immunity to Clayton, who, according to appellants, was himself a part of the conspiracy and should have himself been indicted as a defendant.

4. *See* also opinion *United States v. Scott Nichols,* 877 F.2d 825 (10th Cir.1989), filed this date, which addresses Nichols' similar argument.

5. Use of government informants and undercover agents are "a recognized and permissible means of investigation." *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973); *see also United States v. Warren,* 747 F.2d 1339, 1341–44 (10th Cir.1984) (for a thorough summary of case law on this issue).

uments and testimony not received into evidence, misstated certain testimony, and also declared that he was sure that "every member of the Task Force would be more than happy to discuss policy decisions with you after your task as jurors is concluded." Closing argument similar to the closing argument in the instant case, however, was held not to constitute reversible error in *United States v. Dickey*, 736 F.2d 571 (10th Cir.1984). In *Dickey*, the prosecutor invited the jury to discuss certain aspects of that case with either himself or the United States Attorney after concluding their jury service on the case at hand.

Prosecutors, like defense counsel, have been known to engage in hyperbole in argument to the jury. We do not approve of this sort of closing argument, of course, but feel that any error in the instant case, viewed in context, was harmless. *Dickey*, 736 F.2d at 596. Our holding, as in *Dickey*, is bolstered by the fact that the trial court gave curative instructions after each misstatement and instructed the jury that arguments made by the attorneys were not evidence.

 Appellants next argue that the case against them relied to a great extent on the hearsay statements of their alleged coconspirators. They contend that this hearsay evidence was improperly admitted under the conspiracy exception,[6] because a conspiracy had not been sufficiently established by independent evidence. In *Bourjaily v. United States*, 483 U.S. 171, 107 S.Ct. 2775, 97 L.Ed.2d 144 (1987), the United States Supreme Court held that in determining whether a conspiracy has been shown by a preponderance of the evidence, a court may consider the hearsay statements sought to be admitted and is not limited to so-called "independent evidence." *Id.* at 176, 107 S.Ct. at 2779. Accordingly, our study of the record provides no reason

to believe that the trial court's fact finding that appellants were involved in a conspiracy was clearly erroneous.

 Finally, as stated at the outset, Bouck also contends that the evidence is insufficient to sustain his convictions on the three counts of possession of cocaine with an intent to distribute. Our study of the record indicates the contrary. The record contains sufficient evidence, in the form of testimony and exhibits, of large monetary and drug transactions between Bouck and other coconspirators.[7]

Judgment affirmed.

---

**6.** Federal Rule of Evidence 801(d)(2)(E) exempts from the definition of hearsay statements which are offered against a party and are statements "by a coconspirator of a party during the course and in furtherance of the conspiracy."

**7.** *See United States v. Gay*, 774 F.2d 368 (10th Cir.1985), wherein we stated that "the quantity

of the drug possessed is a circumstance which may permit inference that the possessor intended to sell, deliver, or otherwise distribute." *Id.* at 372 (citing *United States v. Dufriend*, 691 F.2d 948, 951–52 (10th Cir.1982), *cert. denied*, 459 U.S. 1173, 103 S.Ct. 820, 74 L.Ed.2d 1017 (1983)).