UNITED STATES of America, Plaintiff/Appellee,

v.

Juanita VARGAS, aka Juanita Regalo Gasperotto, aka Juanita Regalo Gasperotto de Vargas, and Sixto Nunez, Defendant/Appellant.

No. 89–1267.

United States Court of Appeals, Tenth Circuit.

Feb. 7, 1991.

---

Michael J. Norton, U.S. Atty. for the Dist. of Colo., Denver, Colo., for plaintiff/appellee.

Susan L. Foreman, Asst. Federal Public Defender, Denver, Colo. (Michael Katz,

Federal Public Defender, Denver, Colo., with her on the brief), for defendant/appellant.

Before LOGAN and EBEL, Circuit Judges, and RUSSELL *, District Judge.

EBEL, Circuit Judge.

This case involves the district court's denial of a motion filed jointly by the government and defendant to permit defendant to take part in an undercover drug operation. By cooperating with the government, defendant hoped to earn a reduction in her sentence pursuant to § 5K1.1 of the sentencing guidelines. The district court concluded that it had no authority to grant such a motion, reasoning that to do so would impermissibly implicate the court and defendant in the commission of a crime, violate Article III and the separation of powers, and run counter to the goals of public policy.

## FACTS

On April 6, 1989, Juanita Vargas was arrested for selling approximately one pound of marijuana to an undercover police detective. A search incident to the arrest produced, among other things, a .38 caliber handgun which had been placed under the seat of a Jeep in which she was riding. In addition, the police uncovered almost 75 pounds of marijuana from Vargas' residence pursuant to a search warrant. Vargas was subsequently charged with one count of distributing marijuana (21 U.S.C. § 841(a)(1) and (b)(1)(D)); one count of possession with intent to distribute marijuana (21 U.S.C. § 841(a)(1) and (b)(1)(D)); one count of carrying a firearm during the commission of a drug trafficking crime (18 U.S.C. § 924(c)); and one count of the forfeiture of her Jeep (21 U.S.C. § 853(a)(2)).

After an initial plea of not guilty, the parties eventually worked out a plea agreement whereby Ms. Vargas pled guilty to counts one and three of the indictment and

* Honorable David L. Russell, U.S. District Judge for the Northern, Eastern, and Western Districts of Oklahoma, sitting by designation.

forfeited all interest in the Jeep. The government agreed to move to dismiss count two of the indictment (possession with intent to distribute marijuana) in exchange for defendant's cooperation in divulging her source of marijuana and information about her marijuana dealings. The government also reserved the right to file a substantial assistance motion for departure pursuant to guidelines section 5K1.1.[1]

Two days before the sentencing hearing, the government and defendant jointly filed a "Motion to Permit the Defendant to Provide Substantial Assistance and to Continue Sentencing." Specifically, the parties requested that custody of defendant be transferred to a special agent of the Federal Bureau of Investigation so that the defendant could arrange a controlled drug buy. The district court denied the Joint Motion, concluding that it did not have authority to allow defendants to participate in new criminal activity and that the motion would improperly involve the judiciary in the prosecutorial function. In its ruling the district court stated:

> ... There is nothing that I'm aware of, however, that gives the government the authority to require this Court to permit the release of a defendant from custody to the custody of an investigative agent for the purpose of participating in a crime, and that, indeed, is my view of what this Court is being asked to do and it is my view that it is inappropriate for the Court to come out from under Article 3 in its limited authority and energize activities that seek to prosecute others and, indeed, to generate an offense.... [M]y objection to this kind of thing is that the Court's being asked to step out of its role and become an active participant in seeking out others to prosecute, and that's not consistent with my notion of what a Court should do.

R. Vol. II at 3–4.

At sentencing, the district court dismissed count two of the indictment and

1. Defendant's unchallenged contention is that the government was contemplating a 50% reduction in sentence if defendant successfully cooperated in a controlled buy. App.Br. at 7–8.

sentenced defendant to 21 months imprisonment on count one and five years imprisonment on count three, to run consecutively. The court refused to depart downward from the sentencing guidelines, holding that it was without authority to depart for substantial assistance absent a government motion requesting such a departure.[2]

Both the government and defendant appeal the district court's denial of the Joint Motion. We agree with the parties that the district court based its denial on improper grounds.

## DISCUSSION

■ The Sentencing Guidelines clearly contemplate situations in which a defendant will cooperate with the government and thereby earn a recommendation for a reduction in sentencing. United States Sentencing Commission, *Guidelines Manual*, § 5K1.1; *see also* 18 U.S.C. § 3553(e); Fed.R.Crim.P. 35(b). While none of these provisions gives a defendant an absolute right to cooperate and earn a downward sentence, *see United States v. Kuntz*, 908 F.2d 655, 657 (10th Cir.1990), *United States v. LaGuardia*, 902 F.2d 1010, 1014–15 (1st Cir.1990), criminal defendants are entitled to a fair and impartial consideration by the district court in those instances in which the government and defendant both agree that cooperation would be beneficial. In our view, the sentencing guidelines ultimately call upon district courts to exercise fair discretion in this area. That discretion should be based on consideration of the individualized facts of the case and sound legal principles.

■ It is by now well-recognized that an exercise of discretion that is significantly premised on an incorrect understanding of law is itself an abuse of discretion. As the Supreme Court noted in *Franks v. Bowman Trans. Co.*, 424 U.S. 747, 770–71, 96 S.Ct. 1251, 1266–67, 47 L.Ed.2d 444 (1976), "discretion imports not the court's inclination, but its judgment; and its judgment is

to be guided by sound legal principles." (quotations and citations omitted). *See also Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416, 95 S.Ct. 2362, 2371, 45 L.Ed.2d 280 (1975); *E.E.O.C. v. General Lines, Inc.*, 865 F.2d 1555, 1565 (10th Cir. 1989). Keeping these principles in mind, we turn now to a consideration of the bases for the district court's ruling.

### A. *The Criminal Nature of a Controlled Buy.*

■ At the hearing, the district court asserted that a buy like that contemplated by the government would "generate an offense" and would result in the defendant's "participat[ion] in a crime." R. Vol. II at 3–4. The Eighth Circuit addressed a similar question in *United States v. French*, 900 F.2d 1300 (8th Cir.1990). In *French*, the district court refused to allow the defendant to cooperate with the government by engaging in a controlled buy while released on bail pending his sentencing. The district court had concluded that such a buy was tantamount to the federal crime of drug trafficking and therefore violated the defendant's conditions of release. The appellate court reversed, noting,

> [t]he [district] court [mistakenly] characterizes cooperation with the police in this manner as "drug trafficking," which is a crime. The purpose of controlled drug purchases, however, is to identify and prosecute drug dealers, not to resell or consume the drugs. Such undercover operations therefore do not contain the criminal intent, or *mens rea*, necessary to convert the action into a crime.

*Id.* at 1302.

We agree with the Eighth Circuit's logic. The kind of supervised activity proposed for defendant here would not implicate her in the commission of the crime of drug trafficking, and in any event, she would be protected from prosecution by the pretransactional agreement with the prosecutor.[3]

---

**2.** Following the district court's denial of the Joint Motion, the government refused to file a motion for departure based on what had transpired to date.

**3.** It may, of course, implicate the prospective seller of the controlled substance. There are, however, sufficient defenses available to the prospective seller such that the propriety of the

Under the reasoning of the district court, undercover police officers and informants would be guilty of crimes every time they purchased drugs in the course of their investigations. Such a reading would fly directly in the face of judicial precedent, for as the Supreme Court noted in *United States v. Russell*, 411 U.S. 423, 432, 93 S.Ct. 1637, 1643, 36 L.Ed.2d 366 (1973), the use of government informants and undercover agents is a "recognized and permissible means of investigation." *See also United States v. Bouck*, 877 F.2d 828, 830 (10th Cir.1989); *United States v. Warren*, 747 F.2d 1339, 1341 (10th Cir.1984). As a general proposition, there is nothing inherently improper about the government seeking the assistance of a convicted defendant in a controlled buy to expose ongoing criminal conduct. Thus, the court's refusal to grant the joint motion on the grounds that it may involve defendant's participation in a crime was based on a "fundamental error of law." *French*, 900 F.2d at 1302.

### B. *Constitutional Prohibitions.*

 In addition, the district court suggested that it was prohibited from granting the joint motion by the constitutional strictures of Article III and separation of powers. We hold that neither of these constitutional doctrines barred the district court from granting such a motion. As the Supreme Court noted in *Mistretta v. United States*, 488 U.S. 361, 381, 109 S.Ct. 647, 659, 102 L.Ed.2d 714 (1989) (upholding the constitutionality of the sentencing guidelines), "our constitutional system imposes upon the Branches a degree of overlapping responsibility, a duty of interdependence as well as independence the absence of which would preclude the establishment of a Nation capable of governing itself effectively." (quotations and citations omitted). Nowhere has this interdependence and overlapping responsibility been more apparent than in the area of prosecutorial inves-

tigations. Today courts are empowered to authorize government wiretaps (*Katz v. United States*, 389 U.S. 347, 355, 88 S.Ct. 507, 513, 19 L.Ed.2d 576 (1967); *Osborn v. United States*, 385 U.S. 323, 329–31, 87 S.Ct. 429, 432–33, 17 L.Ed.2d 394 (1966); 18 U.S.C. § 2518), undercover surveillance operations (*Russell*, 411 U.S. at 432, 93 S.Ct. at 1643; *Warren*, 747 F.2d at 1341), and prosecutorial immunity for government witnesses (18 U.S.C. § 6003). Moreover, the government and courts interface on sentencing and plea bargaining arrangements all the time. *See* Fed.R.Crim.P. 11(e).

It is difficult to distinguish between the authorization of wiretaps and undercover operations on the one hand and the authorization of a controlled buy through a cooperating criminal defendant on the other. In each such case, the district court is peripherally involved in the prosecutorial function, providing a check on prosecutorial abuse and an opportunity for further criminal investigation. Here the district court was not asked to initiate, orchestrate, or direct defendant's proposed conduct. It was asked merely to authorize the defendant's release to the custody of a special agent of the F.B.I. so that defendant would have an opportunity to provide the cooperation agreed upon between the defendant and the government. The court itself was not asked to be a party to that agreement. We have found no cases prohibiting this limited degree of involvement by the court.[4] We are thus left to conclude that this expressed fear "for the fundamental structural protections of the Constitution" does not justify a refusal to approve a proposed plan of cooperation between the government and the defendant. *Mistretta*, 488 U.S. at 384, 109 S.Ct. at 660. There can be little doubt that these practices will not "unconstitutionally erode[ ] the integrity and independence of the Judiciary...."

government action may be tested adequately in any subsequent criminal action against him or her.

**4.** The general propriety of such a release does not resolve the question of whether this particular defendant should have been released on the

particular terms proposed. That involves a factual inquiry under 18 U.S.C. § 3143 and the exercise of judicial discretion. Here, however, the district court made no such factual determination nor did it exercise its discretion applicable to the particular facts of this case.

*Id.* As a result, we conclude that it was error for the court to deny the joint motion on these grounds.

### C. *Violation of Public Policy.*

 The district court's final concern was that an undercover buy is "inappropriate" and "not consistent with ... what a Court should do." R. Vol. II at 3–4. This is a public policy argument, which rests on the implicit suggestion that controlled buys violate the policies that animate the guidelines and other criminal sentencing provisions.

As we have already seen, the sentencing guidelines and federal rules of criminal procedure clearly contemplate situations where criminal defendants will cooperate with the government and provide "substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. § 5K1.1; Fed.R. Crim.P. 35(b); *see also* 28 U.S.C. § 994(n); 18 U.S.C. § 3553(e). There is no reason to believe that controlled buys were to be excluded from these provisions. As the Commentary to Section 5K1.1 acknowledges:

> A defendant's assistance to authorities in the investigation of criminal activities has been recognized in practice and by statute as a mitigating sentencing factor. *The nature, extent, and significance of assistance can involve a broad spectrum of conduct that must be evaluated by the court on an individual basis.*

(emphasis added). Indeed, it would seem that these provisions were designed to *promote* the kind of cooperation sought by both defendant and the government here. Defendant here agreed to assist the government in a manner which the government viewed as valuable to its ongoing criminal investigation and prosecution. As the Supreme Court noted in *Russell:*

The illicit manufacture of drugs is not a sporadic, isolated criminal incident, but a continuing, though illegal, business enterprise. In order to obtain convictions for illegally manufacturing drugs, the gathering of evidence of past unlawful conduct frequently proves to be an impossible task. Thus in drugrelated offenses law enforcement personnel have turned to one of the practicable means of detection: the infiltration of drug rings and a limited participation in their unlawful present practices. Such infiltration is a recognized and permissible means of investigation.

*Russell,* 411 U.S. at 432, 93 S.Ct. at 1643. Obviously a "controlled undercover buy" is an important weapon in the battle against drugs, and it is difficult to see how the court or any of the parties would be compromised by such assistance.

Finally, we must agree with *French* that the district court's blanket rule in fact frustrates the public policy goals advanced by these sentencing provisions.[5] We conclude that it is "not ... open to district courts to frustrate a criminal defendant's desire to cooperate (not to mention the government's conduct of criminal investigations) in the way that the District Court's inflexible practice does." *French,* 900 F.2d at 1302. We, of course, recognize that district courts have discretion to consider whether requested presentence releases should be allowed, based upon the individual facts of the case and the characteristics of the defendant. However, here the court never made reference to those individualized facts. Instead, it based the denial of the Joint Motion on incorrect assumptions of law and a judicial policy which is in conflict with the designs of the sentencing guidelines and criminal code.

### D. *Remedy.*

Since the court improperly exercised its discretion in this matter, we vacate the

---

**5.** The district court's rule also frustrates the goal of uniformity in sentencing. The district court stated:

> I realize this is a matter of dispute, that there are other judges—at least in other districts—who participate and believe that the public interest warrants it. I simply disagree and

believe that there are ... constraints on this Court that are of greater importance.

R. Vol. II at 9. This means that criminal defendants who are otherwise equal may receive significantly disparate sentences depending upon which court they are in. We intend by our ruling to resolve this potential disparity.

sentence and remand for consideration of any further joint motion that may be filed by the government and the defendant and for resentencing consistent with this opinion. We do so under the authority of 18 U.S.C. § 3742(f), which states that the appellate court shall remand a sentence that "was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines."

The sentence imposed by the district court in this case was not necessarily in violation of law. However, we find that it *was* imposed as a result of an incorrect application of the sentencing guidelines. By failing to consider on its individual merits the joint request of defendant and the government that defendant be given the opportunity to render substantial assistance as contemplated by the guidelines, the court rendered a sentence that was flawed and based on an incorrect application of the guidelines. Because it is impossible to correct the error without vacating the sentence, we do so and remand to the district court for further consideration. Upon resentencing, the district court should credit the defendant for time already served.

## MISCELLANEOUS

Defendant has raised a number of other issues on appeal. First, the defendant contends that the government breached the plea agreement by not recommending a downward departure at sentencing. This argument is untenable. The written plea

6. The plea agreement stated as follows:
 Defendant will plead guilty to Counts One and Three of the Indictment ... and will pursuant to Count Four ... forfeit any ... right ... to a 1979 Jeep CJ.... Further, defendant will give her full cooperation and a truthful statement regarding [certain transactions] and will testify truthfully at any grand jury proceedings and/or trials which may result as a consequence of her cooperation....
 The Government, in exchange for the above, will move to dismiss Count Two of the indictment filed herein at the time of sentencing. Additionally, the Government will, in its sole and absolute discretion, determine whether or not the defendant's subsequent cooperation and testimony, if any, is, in fact, substantial assistance. If the Government, in its sole and absolute discretion, so determines that such cooperation is in fact substantial assistance,

agreement entered into between defendant and the government makes it clear that the government promised only to dismiss count two of the indictment in exchange for defendant's information and future testimony.[6] The government retained sole and absolute discretion to determine whether defendant's cooperation amounted to substantial assistance meriting a motion for a downward departure pursuant to § 5K1.1.

 When a plea agreement leaves discretion to the prosecutor, the court's role is limited to deciding whether the prosecutor has made its determination in good faith. *United States v. Rexach*, 896 F.2d 710, 714 (2d Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 433, 112 L.Ed.2d 417 (1990). There is no indication of bad faith on the part of the government. It was not unreasonable for the government to conclude that, in the absence of the controlled buy, defendant's cooperation did not amount to substantial assistance. That the defendant was at all times apparently willing to cooperate does not change the calculus. The plea agreement held out the promise of a motion for downward departure in return for the rendering of substantial assistance to the government; it did not promise to reward mere cooperative intent. Thus, the plea agreement spoke in more absolute terms than § 5K1.1, which at the time of defendant's plea agreement extended the opportunity of a downward departure to defendants who "made a good faith effort to provide substantial assistance."[7] Given

the Government will move for departure pursuant to § 5K1.1.`...
The defendant understands, agrees and acknowledges that the Government has made no promise, express or implied, to make any such motion at this time, is under no obligation to make such motion, and will not make any such motion unless the Government decides that the defendant has provided substantial assistance. The defendant further understands, agrees, and acknowledges that, if any such motion is made by the Government, any departure or reduction to the defendant's sentence shall be determined by the court.
App.Br. Attachment A–2.

7. Section 5K1.1 has since been amended so as to "clarify the Commission's intent that departures ... be based upon the provision of substantial

the explicit language of the plea agreement, we conclude that the government was under no obligation to move for a downward departure.

Defendant additionally argues that the government entered into the plea agreement knowing that the district court would reject the joint motion. According to the defendant, the government was aware that the court had frequently rejected motions for controlled buys in the past. As a result, defendant contends that she should be allowed to withdraw her guilty plea. Appellant's Br. at 21. This is a serious allegation. However, nothing in the record supports such allegations of prosecutorial misconduct. The government admits that it

was aware that there existed in the Colorado District Court opposition to an indicted defendant participating in investigative work. However, this general opposition had evolved prior to the Sentencing Guidelines and the Supreme Court decision in *Mistretta v. United States*, 488 U.S. 361 [109 S.Ct. 647, 102 L.Ed.2d 714] (1989) which found that the Sentencing Guidelines were constitutional. In view of *Mistretta*, and the clear directive in Title 18, U.S.C., § 3553(e), Rule 35(b), Fed.R.Crim.P., and Section 5K1.1 of the Sentencing Guidelines, all of which authorized the substantial assistance by a defendant in the investigation of another person, the government did not feel the District Court would disallow the defendant's participation in the controlled buy.

Government's Br. at 17. Nothing in the record casts doubt on the government's statements. That the government has appealed the district court's denial of the joint motion suggests that the plea agreement was indeed entered into in good faith.

■ Finally, we conclude that the district court was correct in holding that it had no authority to depart downward without a government motion. Section 5K1.1 of the Sentencing Guidelines specifically states that a downward departure may be granted "... upon motion by the govern-

assistance" and not "mere willingness to provide such assistance." U.S.S.G.App. C, amendment

ment." This is an unequivocal condition precedent; the court may not act sua sponte in such matters. Existing precedent supports this plain reading of the statute. Just three months ago, in *Kuntz*, 908 F.2d at 657, we concluded that Section 5K1.1 and 18 U.S.C. § 3553(e) "condition the district court's consideration of defendant's substantial assistance claim upon a prior motion of the government." We were even more emphatic in *United States v. Brown*, 912 F.2d 453 (10th Cir.1990), where we held that "a trial court's authority to grant a § 5K1.1 reduction requires an actual motion by the prosecution." *Id.* at 454. This is consistent with the holding of most other circuits. See *United States v. Lewis*, 896 F.2d 246, 248 (7th Cir.1990); *United States v. Coleman*, 895 F.2d 501, 504–05 (8th Cir.1990); *United States v. Alamin*, 895 F.2d 1335, 1337 (11th Cir.), cert. denied, —— U.S. ——, 111 S.Ct. 196, 112 L.Ed.2d 158 (1990); *United States v. Francois*, 889 F.2d 1341, 1344 (4th Cir. 1989), cert. denied, —— U.S. ——, 110 S.Ct. 1822, 108 L.Ed.2d 951 (1990); *United States v. Huerta*, 878 F.2d 89, 91 (2d Cir. 1989), cert. denied, —— U.S. ——, 110 S.Ct. 845, 107 L.Ed.2d 839 (1990); *United States v. Ayarza*, 874 F.2d 647, 653 (9th Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990).

Although the *Kuntz* court acknowledged that a district court may be justified in taking some corrective action in egregious cases—i.e., "where the prosecutor stubbornly refuses to file a motion despite overwhelming evidence that the accused's assistance has been so substantial as to cry out for meaningful relief," *Kuntz*, 908 F.2d at 657—it noted that such cases should be rare given the "significant institutional incentives for the prosecution to exercise sound judgment and to act in good faith." *Id.* (quotations and citations omitted). We agree. There is no evidence in the record that supports the claim of prosecutorial bad faith. Therefore, the district court properly denied defendant's call for a downward departure.

290.

**1268**

## CONCLUSION

Although we recognize that the granting of a motion like the one at issue is properly left to the discretion of the district court, we nevertheless conclude that the district court abused that discretion by basing its denial on erroneous holdings of law. Accordingly, we REVERSE the court's order, VACATE the criminal sentence, and REMAND to the district court for further consideration and for resentencing based on the law as set forth above and the individualized facts of the case.