UNITED STATES of America, Plaintiff,

v.

Harley REVIS, Defendant.

No. 97–CR–163–H.

United States District Court,
N.D. Oklahoma.

Oct. 8, 1998.

Stephen J. Knorr, Federal Public Defender's Office, Tulsa, OK, Harley Revis, Sapulpa, OK, for Harley Revis, defendant.

Stephen J. Knorr, Federal Public Defender's Office, Paul D. Brunton, Kent Randall Hudson, Tulsa, OK, Terrance Revis, Sapulpa, OK, for Terrance Revis, defendant.

Martin Gambil Hart, Tulsa, OK, Roman Yahola, Okemah, OK, for Roman Yahola, defendant.

John David Russell, Gordon Boyd Cecil, United States Attorney, Tulsa, OK, Melody Noble Nelson, Office of the Attorney General, Oklahoma City, OK, for U.S.

## ORDER

HOLMES, District Judge.

This matter comes before the Court on a motion and an amended motion to stay imposition of imprisonment pending appeal of the sentence by Defendant Harley Revis (Docket # 50 and Docket # 51). On September 15, 1998, in accordance with applicable law, the

Court sentenced Defendant to incarceration for 51 months. Defendant requests the Court to stay this sentence of imprisonment pending his appeal.

## I

Federal Rule of Criminal Procedure 38(b) states that a sentence of imprisonment shall be stayed if an appeal is taken and the defendant is released pending appeal pursuant to Rule 9(b) of the Federal Rules of Appellate Procedure.

Defendant has taken an appeal and thus the former requirement has been satisfied. Rule 9(c) directs the Court to use the standards set forth in 18 U.S.C. § 3143 as the criteria for release pursuant to Rule 9(b). That statute, which governs release pending appeal, states in pertinent part as follows:

(1) Except as provided in paragraph (2), the judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal or a petition for a writ of certiorari, be detained, unless the judicial officer finds—

(A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and

(B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—

(i) reversal,

(ii) an order for a new trial,

(iii) a sentence that does not include a term of imprisonment, or

(iv) a reduced sentence to a term of imprisonment less than the total of the time already served plus the expected duration of the appeal process

. . . .

18 U.S.C. § 3143(b) (1994).

Under this statute, Defendant must first establish by clear and convincing evidence that, if released, he is not likely to flee or pose a danger to the safety of any other person or to the community. Based on the present record, and in accordance with the stipulation of the parties, the Court finds that Defendant has satisfied this requirement.

Defendant must further establish by a preponderance of the evidence that the appeal was not filed for purposes of delay. *See United States v. Burger*, 773 F.Supp. 289, 295 (D.Kan.1991). Based on the present record, the Court finds that Defendant has satisfied this requirement as well.

■ Once Defendant has satisfied these threshold requirements, the Court must follow the two-step analysis set forth in *United States v. Affleck*, 765 F.2d 944, 952 (10th Cir.1985) (citing *United States v. Miller*, 753 F.2d 19 (3d Cir.1985)). Under this analysis, the Court must make two determinations: first, whether the appeal raises a "substantial" question of law or fact; and, second, "if that substantial question is determined favorably to defendant on appeal, that decision is likely to result in reversal or an order for a new trial of all counts on which imprisonment has been imposed." *Affleck*, 765 F.2d at 952.

■ A "substantial question" is a " 'close' question or one that very well could be decided the other way." *Id.* (quoting *United States v. Giancola*, 754 F.2d 898, 901 (11th Cir.1985)). *See also Miller*, 753 F.2d at 23 (stating that a "substantial question" is one "which has not been decided by controlling precedent, or which is fairly doubtful"). Whether a particular question is "substantial" should ultimately be decided upon a case-by-case basis. *See Affleck*, 765 F.2d at 952.

Under the second step of the *Affleck* analysis, the Court must decide the significance of the "substantial question" to the ultimate disposition of the appeal. For example, a "court may find that reversal or a new trial is 'likely' only if it concludes that the question is so integral to the merits of the conviction on which defendant is to be imprisoned that a contrary appellate holding is likely to require reversal of the conviction or a new trial." *Id.* at 953 (quoting *Miller*, 753 F.2d at 23).

In the instant case, Defendant claims that testimony against him at trial was introduced in violation of the federal bribery and gratui-

ty statutes. Based on the trial record in this case, the Court finds that a favorable ruling on this claim would result in a new trial. Essentially, therefore, the question before the Court is whether the legal issue raised by Defendant's motion is "one that very well could be decided the other way." *Id.* at 952.

## II

The facts that form the basis of Defendant's motion are not in dispute. After a four-day jury trial, April 27, 1998, through April 30, 1998, Defendant was convicted of one count of conspiracy to commit mail fraud and sixty-two counts of mail fraud. During the course of the trial, Terrance Revis (Defendant's son) and Roman Yahola, testified as witnesses for the United States. Each witness had previously entered into a plea agreement with the U.S. Attorney which specified that he was obligated to provide cooperation to the government, including truthful trial testimony.

Specifically, the plea agreement between the United States Attorney[1] and Mr. Terrance Revis stated as follows:

3. *Cooperation.* If requested by the government, but only if so requested, defendant agrees to cooperate in accordance with the following terms:

a) Defendant shall respond truthfully and completely to any and all questions or inquiries by any government agency at any trial or other court proceeding . . .

d) Defendant understands that only truthful and accurate information and testimony is required pursuant to this provision and that knowingly giving false information or testimony may be prosecuted as an additional criminal offense.

Plea Agreement at 3.

This plea agreement was presented to the Court for review on April 27, 1998, along with a Petition to Enter Plea of Guilty and Order Entering Plea ("Petition"). Following an extensive colloquy in open court pursuant to and in accordance with Federal Rule of Criminal Procedure 11, which included a detailed review of the plea agreement, the Court accepted Mr. Terrance Revis's plea of guilty, pronounced him guilty as charged, signed his Petition, and placed the Petition, with the plea agreement as an attachment, on file of record in this case.

Similarly, the plea agreement between the United States Attorney and Mr. Yahola stated as follows:

3. *Cooperation.* If requested by the government, but only if so requested, defendant agrees to cooperate with the government in accordance with the following terms:

a) Defendant shall respond truthfully and completely to any and all questions or inquiries by any government agent or agency designated by the government, before a grand jury or at any trial or other court proceeding . . .

d) Defendant understands that only truthful and accurate information and testimony is required pursuant to this provision and that knowingly giving false information or testimony may be prosecuted as an additional criminal offense.

Plea Agreement at 3.

This plea agreement was presented to the Court for review on April 16, 1998, along with his Petition. As with Mr. Terrance Revis, following an extensive colloquy in open court in accordance with Rule 11, which included a detailed review of the plea agreement, the Court accepted Mr. Yahola's plea of guilty, pronounced him guilty as charged, signed his Petition, and placed the Petition, with the plea agreement as an attachment, on file of record in this case.

Each of the two plea agreements at issue provided that the defendant will plead guilty to certain specified charges in the Indictment, and that the government will dismiss certain other charges and will not prosecute the defendant further. In addition, each agreement stated that if the defendant "fails to observe and perform any provision of this Agreement" he would be in breach of the

1. In each of these agreements the government promised (1) to dismiss certain criminal charges in the Indictment; and (2) not to prosecute certain other alleged criminal conduct known to the government, subject to limitations.

contract and the government, *inter alia,* "may initiate criminal prosecution of defendant for any violation of federal criminal laws." Plea Agreements at 9–10.

Defendant's instant motion claims that, as a result of the above-described plea agreements, the government impermissibly gave both Mr. Terrance Revis and Mr. Yahola "something of value" (a promise to not prosecute for certain alleged criminal conduct) for their testimony against Defendant in violation of 18 U.S.C. § 201(c)(2). Accordingly, the question presented is whether this claim constitutes a "substantial question" for purposes of bail pending appeal.

The instant motion is based on *United States v. Singleton,* 144 F.3d 1343 (10th Cir. 1998), *vacated and reh'g en banc granted,* (July 10, 1998), which held that the government had violated 18 U.S.C. § 201(c)(2) by entering into a plea agreement that promised leniency to a witness in consideration of his trial testimony. On July 10, 1998, pursuant to Tenth Circuit Rule 35.6, this opinion was vacated and the matter was set for oral argument *en banc* during the November term of court. While the opinion has been vacated and therefore is not controlling authority, the analysis and conclusions in the opinion are before the Court in the form of arguments and authorities in support of Defendant's motion.

### III

■ Generally, to determine whether a statute has been violated, the Court must construe the law in accordance with established rules of statutory construction. In the instant case, however, two arguments have been suggested that would obviate the need for statutory interpretation altogether: first, that the routine practice of entering plea bargains which involve testimony has been in place for so long that to disturb that practice now would greatly disrupt the criminal justice system; and, second, that in some way the United States Attorney is exempt from the provisions of this statute due to his status as a law enforcement official. The Court will address each of these preliminary arguments in turn.

### A

■ There is no question that permitting a criminal defendant to enter a plea of guilty pursuant to a plea agreement that contains a requirement for truthful testimony is a practice of long-standing. However, there is no authority that supports the claim that a long-standing practice, if contrary to law, should nevertheless be upheld.

In this regard, the argument by John W. Davis to the United States Supreme Court in 1952 is worthy of note. Appearing on behalf of the South Carolina school system, Mr. Davis stated "[s]ometime to every principle ... comes a moment of repose when it has been so often announced, so confidently relied upon, so long continued, that it passes the limits of judicial discretion and disturbance." 22 U.S.L.W. 3160 (1953); *see also* 21 U.S.L.W. 3165 (1952). The principle in favor of which Mr. Davis argued was racial segregation. Following re-argument in that case, a unanimous Supreme Court rejected the long-standing practice of racial segregation and with it the notion that historical practice can substitute for law. *See Brown v. Board of Educ.,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954). Accordingly, if the practice of providing leniency for testimony in a plea agreement is unlawful under 18 U.S.C. § 201(c)(2), then it must be overturned, no matter how long that practice may have been followed.

### B

■ The second suggestion is that, as a law enforcement official, the United States Attorney is simply exempt from this law. *See Brogan v. United States,* 522 U.S. 398, ——, 118 S.Ct. 805, 811, 139 L.Ed.2d 830 (1998) (stating "[c]riminal prohibitions do not generally apply to reasonable enforcement actions by officers of the law"); *see also Hampton v. United States,* 425 U.S. 484, 487–88, 96 S.Ct. 1646, 48 L.Ed.2d 113 (1997) (government informant presumed for purposes of decision to have supplied drugs); *United States v. Russell,* 411 U.S. 423, 432, 93 S.Ct. 1637, 36 L.Ed.2d 366 (1973) (undercover policeman supplied necessary chemical for amphetamine production); *United States*

*v. Monaco*, 700 F.2d 577, 580 (10th Cir.1983) (undercover police officers acted as customers and used informants who worked in massage parlors to gather information for an investigation of alleged prostitution).

In the words of the *Singleton* court:

The justification can be generally described as follows: a peace officer, prison guard, or private citizen authorized to act as a peace officer may, to the extent necessary to make an arrest, prevent an escape, or prevent the commission of a crime, violate a criminal statute if the conduct which constitutes the violation is reasonable in relation to the gravity of the evil threatened and the importance of the interest to be furthered.

*Singleton*, 144 F.3d at 1353 (citations omitted).

This Court joins the *Singleton* panel in rejecting this argument and adopts the reasoning set forth in that opinion. There is simply no correlation between the considered prosecution of a case by government lawyers based on the facts, and the street activities of law enforcement officers necessary to investigate criminal conduct. In effect, this argument would permit a United States Attorney to corruptly pay money to a prosecution witness for false testimony without fear of legal sanction under 18 U.S.C. § 201. Clearly, this result cannot obtain. Any claim that prosecutors are exempt from § 201(c)(2) under this theory disparages the activities of those law enforcement officials who are justly entitled to wide latitude in the field, based on the unique difficulty and nature of their work.

## IV

To answer the question presented by Defendant's motion, the Court must construe 18 U.S.C. § 201(c)(2) to determine whether the conduct at issue violated its terms. A prefatory review of the law's historical context and statutory structure is instructive.

The instant statute is rooted in the first federal witness bribery law enacted in 1909. *See United States v. Kennings*, 861 F.2d 381, 387 (3d Cir.1988). Section 134 of that statute prohibited a witness from receiving, agreeing to receive, or offering to receive "a bribe, upon any agreement or understanding that his testimony shall be influenced thereby ...." Act of March 4, 1909, ch. 321, Pub.L. No. 350, § 134, 35 Stat. 1088, 1113. Section 135 prohibited endeavoring to influence a witness "corruptly, or by threats of force." *Id.* § 135.

The statute was amended in 1948 as part of the revision and codification of Title 18 of the U.S. Code. New section 209 of Title 18 prohibited giving or offering "any money or thing of value, or any promise or agreement therefor, or any other bribe to any person being, or about to be, a witness upon a trial ... upon any agreement or understanding that his testimony shall be influenced thereby ...." Act of June 25, 1948, ch. 645, Pub.L. No. 772, § 209, 62 Stat. 683, 693 (revising, codifying, and enacting into positive law Title 18 of the United States Code). Similarly, section 210 prohibited a witness from receiving, agreeing to receive, or offering to receive "a bribe, upon any agreement or understanding that his testimony shall be influenced thereby ...." *Id.* § 210. The 1948 code revisions also prohibited giving a gratuity ("any present of money or thing of value") to a revenue officer. *Id.* § 211. However, the statute did not independently define and prohibit the giving or receiving of a "gratuity" (as opposed to a "bribe") in connection with either testimony or the performance of an official duty.

The statute was again amended in 1962, primarily to address conflicts of interests identified in a report by the New York City Bar Association. Memorandum of Attorney General Regarding Conflict of Interest Provisions of Public Law 87–849, 28 Fed.Reg. 985 (1963), *reprinted in* Historical Note following 18 U.S.C.A. § 201 (1969); *see generally* The Association of the Bar of the City of New York, Special Committee on Federal Conflict of Interest Laws, *Conflict of Interest and Federal Service* (1960). As amended, the law for the first time established a "gratuity" as a specific category of criminal offense, other than a gratuity given to a revenue officer.[2] Act of October 23, 1962, Pub.L.

---

**2.** Prior to 1962, various iterations of the anti-

bribery statutes prohibited in part the wrongful

No. 87–849, § 201, 76 Stat. 1119. The court in *United States v. Irwin*, 354 F.2d 192, 195 (2d Cir.1965), described the history of this statute [3] as follows:

> While the legislative history of this section is not illuminating, it is clear that in passing it in 1962, Congress consolidated and to some extent re-wrote several sections of Title 18, dealing with bribery and corruption, and also added some new provisions to buttress and make more effective the prevention of this kind of public wrong. Many of the provisions were placed in § 201.[4]

■ Current section 201, which deals with both corruption of public officials and witnesses, is divided generally into bribery prohibitions and gratuity prohibitions. *See United States v. Johnson*, 621 F.2d 1073, 1076 (10th Cir.1980) (quoting *United States v. Strand*, 574 F.2d 993, 995 (9th Cir.1978)). The bribery prohibitions in § 201(b) require specific intent to corruptly influence or induce an official or witness. By contrast, the gratuity prohibitions, including § 201(c)(2) at issue here, require neither corruption nor the intent to influence or induce. *See* H.R.Rep. No. 87–748, at 18–19 (1961) (distinguishing between the bribery section that requires an "intent to influence the witness' sworn testimony or to influence him not to give testimony" and the gratuity section which forbids conduct that "has the appearance of evil and the capacity of serving as a cover for evil.").

As noted above, the gratuity provisions, which carry lesser penalties, have been held to be lesser included offenses of the bribery provisions. *See, e.g., Johnson*, 621 F.2d at 1076; *Brewster*, 506 F.2d at 67–76; *Irwin*, 354 F.2d at 197; *but see United States v. Passman*, 460 F.Supp. 912, 916–17 (W.D.La. 1978) (holding that gratuity § 201(g) is not a necessarily lesser included offense of § 201(c)(1)).

## V

Before turning to the proper construction of the instant statute, the Court will first address the canons of statutory interpretation that should control the analysis. Three canons merit particular attention.

### A

■ It is settled law that in construing a statute, the Court must follow the plain meaning rule. *See* 2A Norman J. Singer, *Sutherland on Statutes and Statutory Construction* § 46.01 (5th ed.1992) (hereinafter *Sutherland*). "[T]he meaning of a statute must, in the first instance, be sought in the language in which the act is framed, and if that is plain ... the sole function of the courts is to enforce it according to its terms." *Caminetti v. United States*, 242 U.S. 470, 485, 37 S.Ct. 192, 61 L.Ed. 442 (1917). "The 'strong presumption' that the plain language of the statute expresses congressional intent

making or giving of "any check, order, contract, undertaking, obligation, gratuity, or security." *See, e.g.,* Act of June 25, 1948, ch. 645, Pub.L. No. 772, § 201, 62 Stat. 683, 691 (revising, codifying and enacting into positive law Title 18 of the United States Code). The word "gratuity" in this context, however, referred only to the nature of the bribe and did not purport to define a gratuity as a separate criminal offense.

3. Despite the fact that the 1962 legislation created entirely new gratuity laws (later determined by the courts to be lesser included offenses of the bribery statutes, *see United States v. Brewster*, 506 F.2d 62, 72 (D.C.Cir.1974)), there is virtually no discussion of these provisions in the legislative history. For example, in introducing the legislation on the House floor, Representative Emmanuel Celler stated only:

> Mr. Speaker, the purpose of this bill H.R. 8140 is, first, to strengthen, revise, and simplify existing Federal conflict-of-interest laws; second,

to make appropriate general provision for consultants and temporary employees in the executive branch, the independent agencies and the District of Columbia; and third, to incorporate these conflict-of-interest laws with re-codified prohibitions of bribery and graft, so that improper and unethical practices will be prevented without depriving the Government of the services of competent men and women.

> Present law in this area presents a crazy quilt of contradictory provisions ....

107 Cong. Rec. 14,777 (1961) (statement of Rep. Celler).

4. In 1986, Congress renumbered § 201 into its present form. *See* Criminal Law & Procedure Technical Amendments Act of 1986, Pub.L. No. 99–646, § 46(h), 100 Stat. 3592, 3603. Section 201(c)(2), which was designated § 201(h) before 1986, has not been altered since its enactment in 1962, other than to substitute in one place the words "such person's absence" for the words "his absence."

is rebutted only in 'rare and exceptional circumstances,' when a contrary legislative intent is clearly expressed." *Ardestani v. Immigration and Naturalization Service,* 502 U.S. 129, 135–36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) (citations omitted) (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981)). This requirement that the Court accept the plain language is tempered only by the admonition that a literal interpretation must be rejected if it would lead to an absurd result. *See* 2A *Sutherland* § 46.07; *United States v. Brown,* 333 U.S. 18, 68 S.Ct. 376, 92 L.Ed. 442 (1948).

**B**

 It is equally settled law that if a specific statutory provision conflicts with a general one, the specific statute governs. *See Bulova Watch Co. v. United States,* 365 U.S. 753, 757, 81 S.Ct. 864, 6 L.Ed.2d 72 (1961). Regardless of the priority of enactments, specific statutes should not be deemed controlled or nullified by general statutes absent a definitive contrary intention. *Id.; see also Franklin v. United States,* 992 F.2d 1492, 1502 (10th Cir.1993). "[A] court should not construe a general statute to eviscerate a statute of specific effect." *In re Gledhill,* 76 F.3d 1070, 1078 (10th Cir.1996). In the instant case, this rule commands that if other laws specifically grant the United States Attorney the authority to engage in the conduct at issue here, the general prohibition contained in § 201(c)(2) must give way.[5]

**C**

 Finally, it has been suggested that this statute "is to be broadly construed to further its legislative purpose of deterring corruption." *Singleton,* 144 F.3d at 1345. If correct, the fundamental rule of statutory interpretation that a criminal statute should be construed narrowly would not apply. *See* 3 *Sutherland* § 59.02; *United States v. Fruit Growers' Express Co.,* 279 U.S. 363, 368, 49

S.Ct. 374, 73 L.Ed. 739 (1929). This suggestion, however, is based on cases that reflect a mistaken understanding of the legislative history. Based upon a careful analysis of the Congressional intent and the authorities cited in support of this proposition, this Court concludes that the instant statute, like all other criminal laws, should be narrowly construed.

In suggesting that § 201(c)(2) should be construed broadly, the *Singleton* court relied upon two cases: *United States v. Hernandez,* 731 F.2d 1147, 1149 (5th Cir.1984); and *United States v. Evans,* 572 F.2d 455, 480 (5th Cir.1978). In applicable part, *Hernandez* stated "[w]e recognize, of course, that Section 201 is to be broadly construed in order to effectuate its legislative purpose of deterring corruption." *Hernandez,* 731 F.2d at 1149 (citing *Evans,* 572 F.2d at 480).

In turn, *Evans* stated:

As a prefatory premise, we note that both the conflict of interest statute, 18 U.S.C.A. § 203, and the unlawful gratuity statute, 18 U.S.C.A. § 201, must be broadly construed in order to accomplish the legislative purpose which they manifest. *See United States v. Anderson,* 509 F.2d 312, 333 (D.C.Cir.1974), *cert. denied,* 420 U.S. 991, 95 S.Ct. 1427, 43 L.Ed.2d 672 (1975); *Parks v. United States,* 355 F.2d 167, 168 (5th Cir.1965).

*Evans,* 572 F.2d at 480. In addition, the opinion's footnote 29 stated in its entirety as follows:

In the 1962 consolidation and codification of the various related statutes, the Congress sought to approve and preserve the courts' broad construction of these statutory provisions:

Insofar as the conflict-of-interest laws are concerned, the bill has two purposes. First, it would simplify and strengthen the conflict laws presently in effect . . . .

---

5. Clearly, there exist statutory exceptions to the general prohibition against giving something of value for or because of testimony. For example, 18 U.S.C. § 3521(a) expressly authorizes the Attorney General to provide for the relocation and protection of certain federal witnesses. Thus, the question presented here is whether other specific laws similarly authorize the instant plea agreements such that 18 U.S.C. § 201(c)(2) must give way.

A secondary feature of the bill is the substitution of a single comprehensive section of the Criminal Code for a number of existing statutes concerned with bribery. *This consolidation would make no significant changes of substance and, more particularly, would not restrict the broad scope of the present bribery statutes as construed by the courts.*

The necessity for maintaining high ethical standards of behavior in the Government becomes greater as its activities become more complex and bring it into closer and closer contact with the private sector of the Nation's economy. Sen. Rep. No. 2213, 87th Cong., 2d Sess., reprinted in (1962) U.S.Code Cong. & Admin. News, pp. 3852–53.

*See also, Wilson v. United States,* 230 F.2d 521, 524 (4th Cir.), *cert. denied,* 351 U.S. 931, 76 S.Ct. 789, 100 L.Ed. 1460 (1956); *Hurley v. United States,* 192 F.2d 297, 300 (4th Cir.1951).

*Id.* n. 29 (emphasis added).

It should be emphasized that this reference to "the broad scope of the present

bribery statutes as construed by the courts" appeared in a Senate Report urging the enactment of what is presently § 201(c)(2). Thus, this language referred only to the construction of the bribery statutes then in effect, not to the gratuity statutes that were included in the proposed legislation that was the subject of this report. As noted above, prior to 1962 there were no independent gratuity offenses in the law, except to prohibit gratuities given to a revenue officer.

More importantly, a careful review of the relevant cases makes clear that the "broad scope" endorsed by the legislative history applies only to what courts considered to constitute acts by public officers in their "official capacity." This fact is clear from the two pre–1962 cases cited in *Evans, Wilson,*[6] 230 F.2d at 523 (prosecuting a former Army official for conspiracy to commit bribery in connection with the sales of insurance to military personnel under § 202) and *Hurley,*[7] 192 F.2d at 299 (prosecuting an individual for bribing an Army sergeant to keep a man out of the armed forces under § 201), as well as from the cited cases that were decided after 1962. *See Hernandez,* 731 F.2d at 1149 (prosecuting a deputy sheriff under

---

**6.** The pre–1962 bribery statute that was at issue in *Wilson* provided in applicable part as follows:

Whoever, *being an officer or employee of, or person acting for or on behalf of the United States, in any official capacity,* under or by virtue of the authority of any department or agency thereof, or an officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or of both Houses thereof, asks, accepts, or receives any money, or any check, order, contract, promise, undertaking, obligation, gratuity, or security for the payment of money, or for the delivery or conveyance of anything of value, with intent to have his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity, or in his place of trust or profit, influenced thereby, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both; and shall forfeit his office or place and be disqualified from holding any office of honor, trust, or profit under the United States.

Act of June 25, 1948, ch. 645, Pub.L. No. 772, § 202, 62 Stat. 683 (emphasis added).

**7.** The pre–1962 bribery statute that was at issue in *Hurley* provided in applicable part as follows:

Whoever promises, offers, or gives any money or thing of value, or makes or tenders any check, order, contract, undertaking, obligation, gratuity, or security for the payment of money or for the delivery or conveyance of anything of value, *to any officer or employee or person acting for or on behalf of the United States, or any department or agency thereof, in any official function, under or by authority of any such department or agency* or to any officer or person acting for or on behalf of either House of Congress, or of any committee of either House, or both Houses thereof, *with intent to influence his decision or action on any question, matter, cause, or proceeding which may at any time be pending, or which may by law be brought before him in his official capacity,* or in his place of trust or profit, or with intent to influence him to commit or aid in committing, or to collude in, or allow, any fraud, or make opportunity for the commission of any fraud, on the United States, or to induce him to do or omit to do any act in violation of his lawful duty, shall be fined not more than three times the amount of such money or value of such thing or imprisoned not more than three years, or both.

Act of June 25, 1948, ch. 645, Pub.L. No. 772, § 201, 62 Stat. 683 (emphasis added).

§ 201(d)); *Evans,* 572 F.2d at 475 (prosecuting a federal official with the office of education in then-HEW under § 201, including the gratuity statute § 201(g)); *Anderson,* 509 F.2d at 316 (prosecuting a defendant for bribing a United States Senator under § 201(a)); *Parks,* 355 F.2d at 168 (prosecuting an individual for bribing an Air Force Sergeant under § 201).

In this regard, the statement in the pre–1962 *Wilson* case (cited favorably in the *Evans* footnote) is instructive:

> Certainly, in the face of such sweeping language and the purpose it was designed to accomplish, we find no reason to find any intent on the part of Congress that the statute must be narrowly construed, to exclude any person or any conduct fairly within the broad statutory ambit. To this statute (and its companion, 18 U.S.C.A. § 201), the federal courts have properly given an extremely liberal interpretation.
>
> Thus, in *United States v. Birdsall,* [233 U.S. 223, 34 S.Ct. 512, 58 L.Ed. 930 (1914)] the recommendations for clemency (for which the bribe was accepted) were not a part of the prescribed duties of the agents in the Bureau of Indian Affairs. Said Mr. Justice (afterwards Chief Justice) Hughes: *"Every action that is within the range of official duty comes within the purview of these sections. There was thus a legislative basis * * * for the charge in the present cases, if the action sought to be influenced was official action."*

*Wilson,* 230 F.2d at 524 (citations omitted) (emphasis added); *accord Hurley,* 192 F.2d at 300 (the other pre–1962 case cited favorably in the *Evans* footnote) (stating "[w]hen the bribee is an officer of the United States, there is no necessity to show that he was acting in an official capacity, in order to make out a case under 18 U.S.C.A. § 201.").

Moreover, *Evans* itself stated "[t]he purpose of these statutes is to reach any situation in which the judgment of a government agent might be clouded because of payments or gifts made to him by reason of his position 'otherwise than as provided by law for the proper discharge of official duty.' " *Evans,* 572 F.2d at 480 (quoting § 201).

Finally, to the extent the statute's purpose is "deterring corruption," *Hernandez,* 731 F.2d at 1149, it is noteworthy that *Black's Law Dictionary* defines "corruption" as "[a]n act done with an intent to give some advantage inconsistent with official duty and the rights of others." *Black's Law Dictionary* 345 (6th ed.1990).

Thus, the reference to "broad scope" in the 1962 Senate Report cited by *Evans* merely expresses the intent of Congress, by legislating in this area, not to disturb broad judicial interpretations of "official capacity" as determined by the courts under prior law.[8] The limited application of this language cannot displace altogether time-honored rules of statutory interpretation and command that every provision of the criminal statute at issue here must be broadly construed. Accordingly, the Court will apply the accepted standard of narrow construction to § 201(c)(2). *Accord United States v. Conners,* 606 F.2d 269, 272 (10th Cir.1979).

## VI

Applying the accepted rules of statutory construction, the Court will now turn to the language of 18 U.S.C. § 201(c)(2). Section 201(c)(2) provides in applicable part as follows:

> Whoever ... directly or indirectly, gives, offers or promises anything of value to any person, for or because of the testimony under oath or affirmation given or to be given by such person as a witness upon a trial, hearing, or other proceeding, before any court ... authorized by the laws of the United States to hear evidence or take testimony ... shall be fined under this

---

8. Consistent with this view, the *Anderson* court declared "[t]he Congressional objective was broad," *Anderson,* 509 F.2d at 333, and cited in a footnote the following statement from the House Report:

> The proper operation of a democratic government requires that officials be independent and impartial; that Governmental decisions and policy be made in the proper channels of the governmental structure; that public office not be used for personal gain; and that the public have confidence in the integrity of its government. H.R.Rep. No. 748, 87th Cong., 1st Sess., 5–6 (1961).

**1254**

title or imprisoned for not more than two years, or both.

18 U.S.C. § 201(c)(2) (1994) (hereinafter "§ 201(c)(2)").

### A

 The Court must first consider whether the word "[w]hoever" in this statute applies to the United States Attorney. At the outset, the Court acknowledges that one principle applicable to statutory interpretation provides that laws which tend to restrain or diminish the powers, rights, or interests of the sovereign do not apply to the government or affect governmental rights unless the text expressly includes the government. *See United States v. Herron*, 87 U.S.(20 Wall.) 251, 256, 22 L.Ed. 275 (1873). The *Singleton* court limited this principle to two classes of cases: statutes which, unless the government is exempted, would deprive the sovereign of "a recognized or established prerogative title or interest," *Nardone v. United States*, 302 U.S. 379, 383, 58 S.Ct. 275, 82 L.Ed. 314 (1937); and, statutes which would create an absurdity if applied to the government. *See id.* at 384, 58 S.Ct. 275.

In *United States v. Arana*, 18 F.Supp.2d 715, No. 95–CR–80272, 1998 WL 420673 (E.D.Mich. July 24, 1998), the court rejected the limitations on this rule announced by *Singleton. See id.* at 718. The *Arana* court further held that the application of § 201(c)(2) to the government would work an absurdity due to the inconsistency between the prohibitions in the anti-gratuity statute and the authority granted by 18 U.S.C. §§ 6001–6005 and 18 U.S.C. § 3553(e) and the sentencing guidelines.[9] *See id.* at 718–19.

 The argument advanced in *Arana* for a blanket exemption from the law under this principle must fail. As noted above, it is too plain for argument that if a United States Attorney corruptly pays money to a prosecution witness for false testimony, such conduct

would be covered under the bribery and gratuity prohibitions in 18 U.S.C. § 201. This result is not absurd; indeed, a contrary outcome would be absurd. Moreover, once it is conceded that the statute covers such government conduct in at least one instance, the argument that the statute cannot apply to the government at all is lost. Refinements in the facts can do nothing to revive any claim for a blanket exemption. Thus, under its plain meaning, the word "[w]hoever" must apply to all parties, including the United States Attorney.

### B

 Second, the Court must consider whether leniency is "something of value." For the reasons advanced by the *Singleton* court, this also is too plain for argument. It is beyond dispute that an enforceable promise by the government not to prosecute an individual for specific charges in a criminal indictment is "something of value."

### C

Finally, the Court must consider whether the agreement by the United States Attorney not to prosecute the defendant for certain charges in the Indictment was in fact "for or because of" his testimony.

 In order to determine whether the leniency embodied in the plea agreements was "for or because of" the witness's testimony, the Court must first determine the meaning of the words "for or because of." At the outset, the Court observes that many courts have construed this phrase as having a single meaning. For example, the court in *United States v. Moody*, 977 F.2d 1420 (11th Cir. 1992), stated as follows:

> Giving something of value "for or because of" a person's testimony obviously proscribes a bribe for false testimony; per-

---

**9.** The opinion in *Arana* further asserted that only the court, pursuant to Rule 11, and not the government, "gives" leniency to the witness. This assertion cannot be maintained. In the instant case, each of the witnesses entered into a contract with the United States Attorney which included an enforceable promise by the govern-

ment not to prosecute the defendant for certain alleged criminal conduct. In addition, each of these agreements expressly provided that the court was not a party to the contract. Thus, any argument that in some way the court is either a party to or a "giver" under these or similar plea agreements is without merit.

sons of ordinary intelligence would come to no other conclusion.[10]

*Id.* at 1425; *see also Singleton,* 144 F.3d at 1348.

■ There is, however, no justification for viewing the words "for or because of" as a unitary concept. Indeed, the use of the disjunctive "or" plainly anticipates two separate and distinct notions. It is settled law that "[s]tatutes must be so interpreted as to give meaning to every portion thereof." *Hurley,* 192 F.2d at 299; *see Carcamo–Flores v. INS,* 805 F.2d 60, 66 (2d Cir.1986) ("There is a presumption against construing a statute as containing superfluous or meaningless words or giving it a construction that would render it ineffective."); *see also* 2A *Sutherland* § 45.12. This principle of interpretation is embodied in the maxim *ut res magis valeat quam pereat* ("that the thing may rather have effect than perish"). Thus, to merge the words "for" and "because of" is contrary to the fundamental requirements of statutory construction. Accordingly, the Court must construe "for" and "because of" as independent terms with independent meanings.

The term "for" is defined in applicable part by *Black's Law Dictionary* as follows: "In consideration for; as an equivalent for; in exchange for; in place of; as where property is agreed to be given 'for' other property or 'for' services." *Black's Law Dictionary* 644 (6th ed.1990). Applying this definition to the instant case, the Court concludes that the word "for" in § 201(c)(2) is synonymous with "in consideration of" as those words are understood in the law of contracts.

■ To the extent Defendant asserts that the leniency provided in the plea agreement was "for" or, as the Court has determined here, "in consideration of," testimony, the Court finds this assertion must fail. *Black's Law Dictionary* defines "consideration" as a "basic, necessary element for the existence of a valid contract that is legally binding on the parties." *Black's Law Dictionary* 306 (6th ed.1990); *see* Restatement (Second) of Contracts, § 71 (1981); *see also* 1 E. Allan Farnsworth, *Farnsworth on Contracts,* § 2.6 at 72 (1990) (quoting Justice Holmes to the effect that what is required is that the promise and the consideration be in "the relation of reciprocal conventional inducement, each for the other." O. Holmes, The Common Law 293–294 (1881)). In this case, it is clear that the consideration for the government's promise not to prosecute Mr. Terrance Revis and Mr. Yahola for certain alleged criminal conduct was each defendant's promise to enter a plea of guilty to certain charges in the Indictment.[11]

■ Furthermore, it is settled law that plea and cooperation agreements should be interpreted according to the law of contracts. *See United States v. Rexach,* 896 F.2d 710, 714 (2d Cir.1990). A careful application of the principles of contract law to the instant plea agreements reveals that the reference to testimony is not "consideration" at all. The plea agreements direct that each defendant "shall respond truthfully and completely" to all questions "if requested by the government, *but only if so requested.*" Plea Agreements at 3 (emphasis added). Because each defendant is obligated to provide testimony only if called, this duty is conditional and not a "necessary element for the existence of a valid contract." Indeed, if neither defendant was called to testify, the duty by the United States Attorney not to prosecute for certain alleged criminal conduct, including specific charges in the Indictment, would nevertheless remain enforceable.

---

**10.** In addition, one court has concluded that the criminal act contemplated and encompassed by § 201(c)(2) requires giving something of value "for *false* testimony." *See Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n,* 865 F.Supp. 1516, 1523 (S.D.Fla. 1994), *aff'd in part, rev'd in part, and remanded,* 117 F.3d 1328 (11th Cir.1997) (emphasis added). The Court merely observes that it is challenging enough to construe the actual words in the instant statute without amending it *sua sponte* to include additional words. *See Singleton,* 144 F.3d at 1358.

**11.** The Court acknowledges that, of course, many complex issues are embodied in an agreement to enter a plea of guilty, including the implied agreement to waive voluntarily certain constitutional rights. *See, e.g., Brady v. United States,* 397 U.S. 742, 748, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970).

The Restatement (Second) of Contracts describes such a condition in § 230 as follows: "If under the terms of the contract the occurrence of an event is to terminate an obligor's duty of immediate performance ... that duty is discharged if the event occurs." Comment a. to § 230 explains that "[p]arties sometimes provide that an obligor's matured duty will be extinguished on the occurrence of a specified event, which is sometimes referred to as a "condition subsequent." " *See also* Restatement (Second) of Contracts § 224, cmt. e (1981).

This principle encompasses the requirement to provide truthful testimony, if called, in the instant case. Here, in the event that a defendant was called to testify and gave false trial testimony, then the United States Attorney would have been discharged of his contractual duty not to prosecute that defendant for other offenses under federal law. The Court finds that, under the law of contracts, such a condition subsequent is not consideration, and therefore does not satisfy the definition of the term "for" in § 201(c)(2).

■■■■ The Court further finds that as a matter of contract law a commitment to provide truthful testimony, such as the commitments here, simply cannot serve as consideration. It is settled law that a promise to do that which one is already under an obligation to do cannot be "consideration" for a contract. *See* Restatement (Second) of Contracts § 73 (1981) (stating that "[p]erformance of a legal duty owed to a promissor which is neither doubtful nor the subject of honest dispute is not consideration."). The defendants here had a clear legal duty to testify truthfully, if called. *See, e.g.,* 18 U.S.C. § 1621(1). Under the law of contracts, a promise to perform this pre-existing legal duty cannot serve as consideration for an agreement. Accordingly, in the instant case, the promise to testify truthfully, if called, was not consideration and therefore was not given "for" any promise by the United States Attorney.

■■■■ The Court now must consider the words "because of." [12] As noted above, the statute must be construed to give each term an independent meaning. *See Hurley,* 192 F.2d at 299. "Because of," therefore, must mean something other than "for." Since "for" means "in consideration of," which contemplates a *quid pro quo* relationship between the thing of value given and the thing received, then "because of" plainly contemplates a less direct relationship. This notion was expressed in *United States v. Brewster,* which stated:

> "Corruptly" bespeaks a higher degree of criminal knowledge and purpose than does "otherwise than as provided by law for the proper discharge of official duty." It appears entirely possible that a public official could accept a thing of value "otherwise than as provided by law for the proper discharge of official duty," and at the same time not do it "corruptly." ...

> ... The bribery section makes necessary an explicit *quid pro quo* which need not exist if only an illegal gratuity is involved; the briber is the mover or producer of the official act, but the official act for which the gratuity is given might have been done without the gratuity, although the gratuity was produced because of the official act.

506 F.2d at 71–72.

In *United States v. Sun–Diamond Growers of California,* 138 F.3d 961 (D.C.Cir. 1998), *petition for cert. filed,* 67 U.S.L.W. 3170, No. 98–374 (U.S. Aug. 31, 1998) the court discussed this issue at length:

> To satisfy the criminal intent requirement embodied in the phrase "for or because of any official act," the giver must intend either to reward some past concrete official act or acts, or to enhance the likelihood of some future act or acts ....

> [I]n contrast to bribery, the gratuity and the official act need not each motivate the other. But the gratuity statute by its

12. If the phrase "for or because of" were construed as a unitary concept, the inquiry would end at this point with the conclusion that, under the law of contracts, the promise here to provide truthful testimony if called to testify was not given "for or because of" the government's promise not to prosecute the defendants for other alleged criminal conduct. However, since this phrase should be parsed under the rules of statutory interpretation, the Court must separately construe the meaning of the words "because of" as used in § 201(c)(2).

terms does still require at least a unidirectional relationship—the gift must be "for or because of" the act.

The relation may be simply one of reward. "As the word 'gratuity' implies, the intent most often associated with the offense is the intent to 'reward' an official for an act taken in the past or to be taken in the future." *United States v. Sawyer*, 85 F.3d 713, 730 (1st Cir.1996) (construing virtually identical Massachusetts gratuity statute). Even in such a case, the giver presumably hopes that his gratuity will affect the recipient's future conduct—and this was undoubtedly the concern that motivated Congress to bring rewards for past acts within the coverage of the statute. But, in contrast to bribery, it is enough under the gratuity statute if the defendant gives an unpromised benefit for a past governmental favor. And, whatever degree of intent to influence may be necessary for a bribe, a gift looking to future acts can be an unlawful gratuity where the giver is motivated simply by the desire to increase the likelihood of one or more specific, favorable acts....

138 F.3d at 966 (construing related provision § 201(c)(1)(A)).[13]

■■■ Based on these authorities, and the common meaning of the word "gratuity,"[14] the Court finds that the promise to testify truthfully, although not consideration, is sufficient to satisfy the requirement "because of" under § 201(c)(2). The phrase "because of" is clearly broad enough to encompass a condition subsequent in an agreement where, as here, the condition subsequent would not have been in the contract but for the mutual promises between the parties to the plea agreement, one of which was a promise of leniency.

## VII

■■■ Having concluded that the United States Attorney ("[w]hoever"), gave leniency ("something of value") "because of" testimony in this case, the Court finds that such actions come within the language of § 201(c)(2). Thus, under the applicable rules of statutory interpretation, the analysis turns to whether the instant conduct by the United States Attorney was specifically authorized by other laws such that the general prohibition in § 201(c)(2) must give way. This requires a review of the authorities that govern plea agreements and the procedures by which such agreements are entered into and approved by the court.

■■■ Plea bargaining is a legally sanctioned process. *See Brady v. United States*, 397 U.S. 742, 751, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). It is well-established that a defendant is acting voluntarily under the Constitution when he agrees to enter a plea of guilty, even when that plea is motivated by a desire to be charged with a lesser offense.[15]

---

13. *See also Strand*, 574 F.2d at 995 n. 2, stating:
The bribery portions of 18 U.S.C. § 201, subsections (b), (c) and (d), require that the thing of value be given or accepted "corruptly" and "with intent to influence" or "in return for" being influenced. The gratuity portions, subsections (f) and (g), require only that the thing of value be given or accepted "otherwise than as provided by law for the proper discharge of official duty," thus covering instances where the public official *would carry out the act or omission whether or not he received the thing of value.*
*Id.* (emphasis added).

14. *Black's Law Dictionary* defines "gratuity" as follows:
Something acquired or otherwise received without bargain or inducement. Something given freely or without recompense; a gift; something voluntarily given in return for a favor or especially a service, hence, a bounty; a tip; a bribe.

*Black's Law Dictionary* 701 (6th ed.1990) (citations omitted).

15. The Supreme Court stated in *Brady:*
The standard as to the voluntariness of guilty pleas must be essentially that defined by Judge Tuttle of the Court of Appeals for the Fifth Circuit:
"[A] plea of guilty entered by one fully aware of the direct consequences, including the actual value of any commitments made to him by the court, prosecutor, or his own counsel, must stand unless induced by threats (or promises to discontinue improper harassment), misrepresentation (including unfulfilled or unfulfillable promises), or perhaps by promises that are by their nature improper as having no proper relationship to the prosecutor's business (e.g. bribes.)"
*397 U.S. at 755, 90 S.Ct. 1463* (citations omitted).

*See id.* It is equally well-established that this desire may be embodied in an enforceable agreement whereby the defendant promises ·to enter a plea of guilty and the government promises to prosecute only a lesser charge. · *See Santobello v. New York,* 404 U.S. 257, 262, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971) (stating "when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled."); *see also United States v. Hand,* 913 F.2d 854, 856 (10th Cir. 1990). Thus, a promise of leniency in a plea agreement is binding and may be enforced with the remedy of specific performance. *See Santobello,* 404 U.S. at 262, 92 S.Ct. 495; *see also Allen v. Hadden,* 57 F.3d 1529 (10th Cir.), *cert. denied,* 516 U.S. 1000, 116 S.Ct. 544, 133 L.Ed.2d 447 (1995); *United States v. Benson,* 836 F.2d 1133, 1136 (8th Cir.1988); *United States v. Carbone,* 739 F.2d 45, 46 (2d Cir.1984). Further, such an agreement may include an agreement as to the sentence to be imposed which, if approved under Rule 11, will be binding on the court as well. *See* Fed. R.Crim. Proc. 11(e)(1)(C); *United States v. Cunavelis,* 969 F.2d 1419, 1422 (2d Cir.1992).

Pursuant to legislation passed in 1986, plea agreements also may include a promise by the defendant to provide cooperation and a promise by the government to reward that cooperation through a motion for a reduced sentence. That year, Congress enacted what is now 28 U.S.C. § 994(n) as § 1008(1) of the Anti–Drug Abuse Act of 1986, Pub.L. 99–570, 100 Stat. 3207. In § 1007 of the Anti–Drug Abuse Act, Congress also enacted what is now 18 U.S.C. § 3553(e), and in § 1009 Congress amended Fed.R.Crim.P. 35(b). *See* 100 Stat. 3207–7 to 3207–8. 18 U.S.C. § 3553(e) grants district courts the authority, upon the government's motion, to impose a sentence below a statutory minimum to reflect a defendant's substantial assistance. Section 3553(e) also provides that the court shall impose the lower sentence "in accordance with the guidelines and policy statements issued by the Sentencing Commission pursuant to [28 U.S.C. § 994]."

Similarly, the Anti–Drug Abuse Act amended Rule 35(b) to provide that a district court may lower a sentence to reflect a defendant's post-sentencing substantial assistance and that any sentence a district court so lowers shall be lowered "in accordance with the guidelines and policy statements .... " *See* Pub.L. 99–570, § 1009, 100 Stat. 3207–8. Before its amendment, Rule 35(b) required the government to make a motion before a district court could lower a sentence to reflect a defendant's substantial assistance; the 1986 amendment did not change that requirement. *See* Historical Note to 18 U.S.C.A. Rule 35 (West Supp.1998). Pursuant to these statutes, the Sentencing Commission promulgated policy statement section 5K1.1, which permitted courts to depart downward pursuant to a motion by the government based on the defendant's substantial assistance. *See* USSG § 5K1.1 (1997) (hereinafter "§ 5K1.1").

In construing these laws, courts have required that there must be a motion by the government for the sentencing court to grant a downward departure under § 5K1.1. *See Wade v. United States,* 504 U.S. 181, 185, 112 S.Ct. 1840, 118 L.Ed.2d 524 (1992); *United States v. Kuntz,* 908 F.2d 655, 657 (10th Cir.1990); *United States v. Huerta,* 878 F.2d 89, 93 (2d Cir.1989) ("We believe that whether a defendant's cooperation has risen to the level of 'substantial assistance' to the government is self-evidently a question that the prosecution is uniquely fit to resolve .... In addition, because promises to make such motions are analogous to plea agreements, a defendant would likely not be without recourse in the case of a breach by the government."); *cf. Santobello,* 404 U.S. at 257, 92 S.Ct. 495 (defendant has remedies for breach of plea agreement). Moreover, a prosecutor has significant discretion in determining whether to make such motion. *See United States v. Rexach,* 896 F.2d 710, 714 (2d Cir. 1990). A decision by a prosecutor not to make such a motion will be reviewed only if it *"violates the terms of a cooperation agreement,* is intended to punish the defendant for exercising her constitutional rights, or is based on some unjustifiable standard or classification such as race." *United States v. Doe,* 934 F.2d 353, 358 (D.C.Cir.) *cert. denied*

502 U.S. 896, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991) (emphasis added). Thus, a defendant may bring an action for specific performance of a plea agreement that obligates the government to make a motion for a downward departure in return for "substantial assistance" if the prosecutor fails to do so. *See Kuntz,* 908 F.2d at 657; *see also United States v. Lewis,* 896 F.2d 246, 249 (7th Cir. 1990) ("[W]here the prosecutor has promised to make a § 5K1.1 motion, and the defendant has relied on that promise, the defendant will have recourse in the court if the government breaks that promise."); *United States v. LaGuardia,* 902 F.2d 1010, 1016 (1st Cir.1990) ("[A] defendant has the right to reserve his assistance unless the government by plea agreement, commits to seeking a downward departure."); *United States v. Havener,* 905 F.2d 3, 8 (1st Cir.1990) ("We can find no legal basis for requiring the government to make a § 5K1.1 motion when it did not promise explicitly (nor does the plea bargaining language promise explicitly) to do so ...").

■ These authorities make clear that a defendant and the United States Attorney may enter into a plea agreement which includes both a promise by the defendant to provide substantial assistance and a promise by the government to give something of value to the defendant (a commitment not to charge the defendant with certain offenses and/or a commitment to file a motion for downward departure under § 5K1.1) based on that assistance. *See, e.g., LaGuardia,* 902 F.2d at 1016 ("... a defendant has the right to reserve his assistance unless the government, by plea agreement, commits to seeking a downward departure."); *see also Kuntz,* 908 F.2d at 657 ("... because promises to make such a motion are analogous to plea agreements, a defendant would likely not be without recourse in the case of a breach by the government."). Accordingly, the question becomes whether the term "substantial assistance" includes "testimony." Based upon a careful review of the relevant statutes, regulations, rules, and case law, the Court concludes that it does.

## A

The federal criminal sentencing statute, 18 U.S.C. § 3553(e), provides that "[u]pon motion of the Government, the court shall have the authority to impose a sentence below a level established by statute as a minimum sentence so as to reflect a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense." In addition, 28 U.S.C. § 994(n) instructs the United States Sentencing Commission to ensure that the guidelines reflect "the general appropriateness of imposing a lower sentence than would otherwise be imposed, including a sentence that is lower than that established by statute as a minimum sentence, to take into account a defendant's substantial assistance in the investigation or prosecution of another person who has committed an offense."

■ There is no legislative history construing the words "investigation" and "prosecution" as they are used in these statutes.[16] However, it is settled law that "[w]here the language is plain and admits of no more than one meaning the duty of interpretation does not arise and the rules which are to aid doubtful meanings need no discussion." *Caminetti,* 242 U.S. at 485, 37 S.Ct. 192. The Court finds that the plain meaning rule applies here.

These statutes expressly contemplate that substantial assistance may be rendered in connection with either the "investigation" or the "prosecution" of another person. As noted earlier, the canons of statutory interpretation require that each of these provisions be given a separate and independent meaning. (*ut res magis valeat quam pereat*). Infor-

---

**16.** *See* G. Adam Schweikert, III, Note, *Third Party Cooperation: A Welcome Addition to Substantial Assistance Departure Jurisprudence,* 30 Conn. L.Rev. 1445, 1450, n. 29 (1998). ("The legislative history for the Anti–Drug Abuse Act of 1986, which contains the Narcotics Penalties and Enforcement Act of 1986, is detailed in seventeen reports that were not submitted with the legislation for publication in the U.S.Code Congressional and Administrative News. *See* 1986 U.S.C.C.A.N. 5393. A search in CIS revealed only one report addressing the Narcotics Penalties and Enforcement Act, and it did not address the substantial assistance concept at all. *See* H.R. Rep No. 99–845, pt. 1 (1986).")

mation provided by a defendant with respect to another person prior to either a grand jury hearing or a trial is necessarily assistance in the "investigation." Plainly, therefore, assistance in the prosecution of that person must be in the form of testimony.[17] To construe the statutes to permit courts to reward assistance in the prosecution of another person, and at the same time declare that such assistance does not include testimony, would read the word "prosecution" out of the law. Therefore, under the plain meaning rule, the reference in the statutes to assistance in the prosecution of another person must include "testimony."

## B

This reading of the plain language of § 3553(e) and § 994(n) was reflected in the policy statement and application notes promulgated by the Sentencing Commission in § 5K1.1.[18]

■ Policy statement § 5K1.1 of the sentencing guidelines,[19] entitled "Substantial Assistance to Authorities," states as follows:

Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has commit-

ted an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for the reasons stated that may include, but are not limited to, consideration of the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information *or testimony* provided by the defendant ...

U.S. Sentencing Guidelines Manual § 5K1.1 (1997) (Emphasis added).

The application notes to § 5K1.1 [20] provide in applicable part as follows:

1. Under circumstances set forth in 18 U.S.C. § 3553(e) and 28 U.S.C. § 994(n), as amended, substantial assistance in the investigation *or prosecution* of another person who has committed an offense may justify a sentence below a statutorily required minimum sentence.

2. The sentencing reduction for assistance to authorities shall be considered independently of any reduction for ac-

---

**17.** It is true that there are many acts that would aid the government in a criminal prosecution. Apart from testimony, however, these acts already come within the plain meaning of the phrase "assistance in the investigation ... of another person ...." 18 U.S.C. § 3553(e); 28 U.S.C. § 994(n).

**18.** In *Melendez v. United States*, 518 U.S. 120, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996) Justice Breyer, concurring in part and dissenting in part, wrote:

Congress delegated to the Commission broad authority to determine when sentencing courts may reward substantial assistance with a reduced sentence. *See* 28 U.S.C. § 994(n). The Commission's exercise of delegated authority is normally lawful as long as it is reasonable. *See*, e.g. *United States v. Shabazz*, 933 F.2d 1029, 1035 (C.A.D.C.) (Thomas, J.) (citing *Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 842–845, 104 S.Ct. 2778, 2781–2783, 81 L.Ed.2d 694 (1984)), *cert. denied* sub nom. *McNeil v. United States*, 502 U.S. 964, 112 S.Ct. 431, 116 L.Ed.2d 451 (1991).

**19.** The Court notes that § 5K1.1 is a policy statement rather than a guideline. It is well-recog-

nized, however, that § 5K1.1 reasonably effects the intent of § 994(n) and therefore has the binding force of a guideline. *See United States v. Lewis*, 896 F.2d 246, 247 (7th Cir.1990) ("Section 5K1.1 reflects a reasonable interpretation of § 994(n)'s mandate."). *Lewis* notes that § 994(n) requires only that the guidelines recognize the "general appropriateness" of reducing a sentence for substantial assistance. *Id.; see also United States v. Ayarza*, 874 F.2d 647, 653 (9th Cir.1989) (upholding constitutionality of § 3553 and § 5K1.1), *cert. denied*, 493 U.S. 1047, 110 S.Ct. 847, 107 L.Ed.2d 841 (1990); *United States v. White*, 869 F.2d 822, 829 (5th Cir.) (finding § 5K1.1 accords with § 994(n) directive), *cert. denied*, 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989).

**20.** In *Melendez v. United States*, 518 U.S. 120, 116 S.Ct. 2057, 135 L.Ed.2d 427 (1996), Justice Souter, concurring, wrote:

The Application Notes (which are "the legal equivalent of a policy statement," USSG § 1B1.7) are where the Sentencing Commission has dealt with sentences below statutory minimums.

ceptance of responsibility. Substantial assistance is directed to the investigation *and prosecution* of criminal activities by persons other than the defendant, while acceptance of responsibility is directed to the defendant's affirmative recognition of responsibility for his own conduct.

*Id.* (emphasis added).

These regulations direct that substantial assistance may be rendered by a defendant to the government in connection with either an investigation or a prosecution, and that such assistance expressly includes both "information" and "testimony." § 5K1.1(a)(2). The gravamen of any motion for a downward departure under § 5K1.1 is the nature and extent of the defendant's cooperation ("the significance and usefulness of the defendant's assistance" § 5K1.1(a)(1)). The policy statement specifically directs the court to consider the defendant's testimony as part of any such assistance when determining whether to grant a downward departure. § 5K1.1(a)(2). To suggest that a § 5K1.1 departure can be given in return for assistance that includes information, but not testimony, is to read the word "testimony" out of this policy statement entirely.

■ Moreover, based on the Court's construction of § 994(n) and § 3553(e) above, the Court finds that the Sentencing Commission's construction of the statutes is a reasonable interpretation of Congressional intent. Therefore, the Court owes deference to that interpretation because the Sentencing Commission has been charged by Congress with administration of the statute. *United States v. Doe,* 934 F.2d 353, 359 (D.C.Cir.) ("The Commission's discharge of its delegated authority is entitled to deference."), *cert. denied,* 502 U.S. 896, 112 S.Ct. 268, 116 L.Ed.2d 221 (1991); *see also Chevron U.S.A., Inc. v. Natural Resources Defense Council,* 467 U.S. 837, 842–45, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (explaining principle of deference according to an executive department's construction of a statutory scheme it is entrusted to administer); *see also Lewis,* 896 F.2d at 247 ("Section 5K1.1 reflects a reasonable interpretation of § 994(n)'s mandate"); *LaGuardia,* 902 F.2d at 1015 (upholding § 5K1.1 as proper under 18 U.S.C. § 3553(e)). Indeed, every court that has considered the issue has held that § 5K1.1 is a reasonable interpretation of the statutes and should not be judicially disturbed.[21] Thus, under applicable law, as reflected in § 5K1.1, the government may give a promise of leniency for or because of a defendant's promise for substantial assistance, including a promise of testimony.[22]

## C

The conclusion that the general prohibitions of § 201(c)(2) do not reach the plea agreements here is further supported by the manner in which the instant agreements were approved by the court and entered into the public record under Rule 11.

**21.** *See, e.g., United States v. White,* 869 F.2d 822, 829 (5th Cir.), *cert. denied,* 490 U.S. 1112, 109 S.Ct. 3172, 104 L.Ed.2d 1033 (1989) ("The provision accords with the statutory directive."); *see also United States v. Justice,* 877 F.2d 664 (8th Cir.), *cert. denied,* 493 U.S. 958, 110 S.Ct. 375, 107 L.Ed.2d 360 (1989).

**22.** The court in *Singleton* expressly determined that "substantial assistance" does not include "testimony." *See Singleton,* 144 F.3d at 1354 ("We believe the statutes can be read together in this way; in light of § 201(c)(2), 'substantial assistance' does not include testimony."). This Court respectfully disagrees. First, as discussed above, the plain language of the statutes (28 U.S.C. § 994(n) and 18 U.S.C. § 3553(e)) compels the conclusion that assistance in a prosecution includes testimony. Therefore, to determine that "substantial assistance" does not include "testimony" effectively reads the word "prosecution" out of the statute. Second, the Sentencing Commission has expressly interpreted the phrase "substantial assistance" as used in the statutes to encompass "testimony." Because this interpretation is reasonable, it has the full force and effect of law. Accordingly, for a court to determine that "substantial assistance" does not include "testimony," it must first decide that the Sentencing Commission's interpretation of the statute is unreasonable, and therefore not entitled to judicial deference. The Court notes that the reasonableness of the Sentencing Commission's interpretation of § 5K1.1 was not before the *Singleton* court. *See Singleton* 144 F.3d at 1355 (stating that "[t]he question whether U.S.S.G. § 5K1.1(a)(2) exceeds statutory authority or conflicts with § 201(c)(2) by making testimony, as opposed to other forms of cooperation, a basis for a finding of substantial assistance is not directly before us and we do not decide it.").

Rule 11(e) of the Federal Rules of Criminal Procedure provides in applicable part as follows:

(e) Plea Agreement Procedure.

(1) In General. The attorney for the government and the attorney for the defendant or the defendant when acting pro se may engage in discussions with a view toward reaching an agreement that, upon the entering of a plea of guilty or nolo contendere to a charged offense or to a lesser or related offense, the attorney for the government will do any of the following:

(A) move for dismissal of other charges; or

(B) make a recommendation, or agree not to oppose the defendant's request, for a particular sentence, with the understanding that such recommendation or request shall not be binding upon the court; or

(C) agree that a specific sentence is the appropriate disposition of the case.

The court shall not participate in any such discussions.

(2) Notice of Such Agreement. If a plea agreement has been reached by the parties, the court shall, on the record, require the disclosure of the agreement in open court or, on a showing of good cause, in camera, at the time the plea is offered. If the agreement is of the type specified in subdivision (e)(1)(A) or (C), the court may accept or reject the agreement, or may defer its decision as to the acceptance or rejection until there has been an opportunity to consider the presentence report. If the agreement is of the type specified in subdivision (e)(1)(B), the court shall advise the defendant that if the court does not accept the recommendation or request the defendant nevertheless has no right to withdraw the plea.

(3) Acceptance of a Plea Agreement. If the court accepts the plea agreement, the court shall inform the defendant that it will embody in the judgment and sentence the disposition provided for in the plea agreement.

Fed.R.Crim.P. 11(e).

In the instant case, pursuant to the specific provisions of this rule, the United States Attorney entered into plea agreements with Mr. Terrance Revis and Mr. Yahola. Thereafter, Mr. Terrance Revis and Mr. Yahola each entered a plea of guilty in open court and the Court reviewed and accepted both the plea and the plea agreement on the record. By following these procedures, the United States Attorney both complied with applicable law and accomplished § 201(c)(2)'s legislative purposes of "deterring corruption," [23] *Hernandez,* 731 F.2d at 1149, and prohibiting conduct that has "the appearance of evil and the capacity of serving as a cover for evil." [24] *See* H.R.Rep. No. 87–748, at 18–19 (1961).

### D

Finally, the Court notes that, consistent with the above analysis, case law throughout the Tenth Circuit and other courts is replete with examples of prosecutors granting or recommending leniency in exchange for testimony. *See United States v. Archer,* 70 F.3d 1149, 1150 (10th Cir.1995) (affirming downward departure for substantial assistance based on defendant's testimony against two others in scheme); *United States v. Long,* 936 F.2d 482, 483 (10th Cir.1991) (upholding substantial assistance departure based on defendant's fulfillment of plea agreement by testimony in another case); *United States v. Vargas,* 925 F.2d 1260, 1266 n. 6 (10th Cir. 1991) (authorizing plea agreement in which the defendant would testify in other trials) [25];

**23.** *Black's Law Dictionary* defines "corruption" as follows:

An act done with an intent to give some advantage inconsistent with official duty and the rights of others. The act of an official or fiduciary person who unlawfully and wrongfully uses his station or character to procure some benefit for himself or for another person, contrary to duty and the rights of others.

*Black's Law Dictionary* 345 (6th ed.1990).

**24.** Webster's defines "evil" as "morally reprehensible; arising from actual bad character or conduct." Merriam Webster's Collegiate Dictionary 402 (10th ed.1994).

**25.** In *Vargas,* the Tenth Circuit also noted that the "government and courts interface on sentencing and plea bargaining arrangements all the

*United States v. Gamble,* 917 F.2d 1280, 1281 (10th Cir.1990) (upholding conviction based on plea agreement which stated that "[i]n return for" the government's agreement not to prosecute defendant further, defendant would give testimony in other trials and grand jury proceedings); *see also United States v. Shorteeth,* 887 F.2d 253, 254–55 (10th Cir.1989) (involving the parties' understanding of a provision in the plea agreement that the government would institute no prosecutions against the defendant based on cooperative testimony); *United States v. Jones,* 58 F.3d 688 (D.C.Cir.), *cert. denied,* 516 U.S. 970, 116 S.Ct. 430, 133 L.Ed.2d 346 (1995) (applying contract principles to a plea agreement that included promises by the government both to give leniency and to evaluate defendant's cooperation with an eye toward moving for a downward departure under § 5K1.1 if defendant "provides information to law enforcement officers or testifies"); *Justice,* 877 F.2d at 669 (applying contract principles to a plea agreement that included a promise by the government for a lesser charge and a promise by the defendant for cooperation, including testimony, where the trial court declined to compel the government to file a motion for downward departure, stating that "[i]f Justice desired further leniency for his cooperation during his sentencing he should have at least made it clear that the plea did not affect his entitlement to have the sentencing court consider a departure under § 5K1.1, or alternatively, he should have negotiated for the government's promise to file a § 5K1.1 motion during the sentencing hearing."); *United States v. Proctor,* 931 F.Supp. 897 (D.D.C.1996) (applying contract principles to a plea agreement that contained both a promise of leniency and a promise of cooperation including testimony

where the government declined to seek a downward departure when the defendant refused to testify); *United States v. Pungitore,* No. CIV.A. 97–2972, 1998 WL 470136, at *4 n. 2 (E.D.Pa. Aug.5, 1998) (rejecting defendant's *Singleton* claim); *United States v. Guillaume,* 13 F.Supp.2d 1331, 1333, No. 97–6007–CR, 1998 WL 462199, at *3 (S.D.Fla. Aug.3, 1998) (same); *United States v. Eisenhardt,* 10 F.Supp.2d 521 (D.Md.1998) (same); *Arana,* at 721 (same); *United States v. Duncan,* 10 F.Supp.2d 521 (D.Md.1998) (same). These cases lend further support to the conclusion that a plea agreement may contain a bargained-for promise by a defendant to provide truthful testimony if called to testify.

## VIII

As the above review of the law makes clear, there exists a specific set of procedures whereby the government may enter into a plea agreement with a criminal defendant that contains both a promise by the government for leniency ("something of value") and a promise by the defendant to testify truthfully, if called, at the trial of another person. These specific procedures may be summarized as follows.

[36] Under Rule 11, the government is expressly granted the authority to enter a plea agreement with a criminal defendant. To be effective and enforceable, this agreement must be presented to the court in conjunction with the entry of the plea of guilty.[26]

▉▉▉ Rule 11 further provides that to be effective, the plea agreement must be presented in open court, reviewed by the court, approved and made a part of the record in the case.[27] In this way, public corruption

time," citing to both Rule 11(e) and 18 U.S.C. § 6003, the statute dealing with prosecutorial immunity. *Vargas,* 925 F.2d at 1264.

26. The Court notes that, unlike a contract, if a plea agreement is offered by the government and "accepted" by a defendant, it may still be unilaterally revoked by the government at any time prior to the actual entry of the plea. *See Mabry v. Johnson,* 467 U.S. 504, 509–11, 104 S.Ct. 2543, 81 L.Ed.2d 437 (1984). Thus, the court authorizes the agreement pursuant to Rule 11 and thereby renders it enforceable under the law of contracts.

27. As the Supreme Court stated in *Santobello:* "The plea must, of course, be voluntary and knowing and if it was induced by promises the essence of those promises must in some way be made known." *Santobello,* 404 U.S. at 261–62, 92 S.Ct. 495. This requirement that the plea agreement must become a matter of public record, which is embodied in Rule 11, is crucial. As noted above, a plea agreement must be judicially approved to be enforceable. This approval process also operates to prevent corruption. Accordingly, a secret plea agreement, neither approved in open court nor available for cross-

and conduct that "has the appearance of evil and the capacity of serving as a cover for evil" can be avoided. Further, if the defendant-party to the plea agreement is later called to testify, and testifies, he may be cross-examined on the terms of the plea agreement to probe before the jury the effect on his credibility, if any, caused by the government's commitments either to forego prosecution on other criminal charges or to move for a downward departure, or both. The system expressly contemplates that the jury will then determine to what extent, if any, the leniency promised in the plea agreement influenced the testimony of the witness and will give such weight to the agreement as it believes is proper under the facts of the case.

Moreover, the law specifically grants the government the authority to include in the plea agreement both a promise to give leniency and a condition subsequent that if the defendant is called to testify he must testify truthfully or the government will be relieved of its promise. Courts have uniformly held that bargained-for commitments by the government contained in a plea agreement will be enforced. Among the commitments that courts have recognized as enforceable are promises by the government to charge a defendant with reduced offenses, as well as promises to acknowledge cooperation by the defendant in connection with a separate criminal prosecution by filing a motion for downward departure based on such cooperation. Congress has defined such cooperation as "substantial assistance" in connection with the "investigation" and "prosecution" of another person. Pursuant to this specific Congressional mandate, the Sentencing Commission has promulgated a policy statement and application notes that include "testimony" as an acceptable form of substantial assistance. Such policy statement and application notes are reasonable and therefore have the force and effect of law. Thus, the law specifically provides that among the promises that may be included in a plea agreement entered pursuant to Rule 11 are a promise of leniency by the government and a promise of coopera-

tion by the defendant, including a promise to provide truthful testimony.

■ As noted above, § 201(c)(2) is a criminal statute that must be narrowly construed. A narrowly construed general prohibition must give way to a specific law or set of laws, on the same topic, so long as those specific laws are followed.

In the instant case, the United States Attorney followed the specific procedures mandated by law in all respects. The plea agreements were entered into between the United States Attorney and the defendants, judicially approved in open court, and made part of the public record pursuant to Rule 11. The defendants provided testimony in accordance with their promises to cooperate under these agreements. Defendant Revis cross-examined each of Mr. Yahola and Mr. Terrance Revis on the promise for leniency by the United States Attorney contained in each plea agreement. When the conduct of the government conforms to the specific law, as it did in this case, a claim that it violated the general prohibition in § 201(c)(2) cannot be maintained. Moreover, since these legally mandated procedures have been followed, there is no risk of the public corruption that § 201(c)(2) seeks to prevent.

## IX

■ Having concluded that 18 U.S.C. § 201(c)(2) does not prohibit the conduct of the United States Attorney in the instant case, the Court must finally consider whether Defendant has nevertheless satisfied the requirements for bail pending appeal set forth in 18 U.S.C. § 3143.

It may be argued that a determination of these issues by a three judge panel of the Tenth Circuit favorable to Defendant is sufficient to establish that the question presented is "close" and therefore the standard for bail pending appeal has been met. This argument is given particular force by the Court's great respect for each of the members of that panel.

However, as noted above, the *Singleton* opinion was vacated and thus cannot control

examination at trial, would not comply with legally authorized procedures and therefore would

be subject to the general prohibitions in § 201(c)(2).

the instant case. Accordingly, the Court's sole focus must be the arguments and authorities presented in support of Defendant's motion. If these arguments and authorities are sufficient, this alone should dictate the result.

The Court finds that the United States Attorney was specifically authorized to enter into the plea agreements at issue in this case by the statutes, § 5K1.1 of the United States Sentencing Guidelines, Fed. R. Crim P. 11, and the case law. Accordingly, the Court rejects Defendant's substantive claim that a plea agreement which includes a promise of leniency by the government and a promise of testimony by a defendant is prohibited by 18 U.S.C. § 201(c)(2). At the same time, however, after full consideration of the analysis and conclusions carefully presented in *Singleton*, this Court cannot find as a matter of law that Defendant's claim is not a "close question or one that very well could be decided the other way." *Affleck*, 765 F.2d at 952. Accordingly, Defendant's motions for a stay of imprisonment pending appeal (Docket # 50 and Docket # 51) are hereby granted.

IT IS SO ORDERED.